NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA KRIVULKA, individually and as Co-Executor of the ESTATE OF JOSEPH KRIVULKA,<br><br>                Plaintiff,<br>   v.<br><br>MICHAEL LERNER and LOWENSTEIN SANDLER LLP,<br>                Defendants. | Civil Action No.: 2:20-cv-09724<br><br>OPINION |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court by way of defendants Michael Lerner ("Lerner") and Lowenstein Sandler LLP's ("Lowenstein") (collectively "Defendants") motion to dismiss (ECF No. 13) plaintiff Angela Krivulka's ("Angela" or "Plaintiff") Complaint (ECF No. 1 "Compl.") pursuant to Federal Rule Civil Procedure 12(b)(1). Plaintiff opposed Defendants' motion (ECF No. 30), and Defendants replied (ECF No. 44). The Court has considered the submissions made in support of and in opposition to the motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court grants Defendants' motion to dismiss.

II. **BACKGROUND**

Plaintiff alleges that Defendants, in their role as Plaintiff's counsel, unlawfully failed to disclose certain conflicts of interests during the administration of the estate of her late husband, Joseph Krivulka ("Joseph"), and the incidental probate proceeding. *See generally* Compl. This action is premised on diversity jurisdiction, and while the parties concede that Defendants are

domiciled in New Jersey, they disagree as to where Joseph was domiciled when he died.[1] Plaintiff argues that she and Joseph were "domiciled . . . in Arizona continuously since at least August 2009 through and including the date of [Joseph's] death in February 2018."[2] Compl. at ¶ 15. Defendants argue that Joseph was domiciled in New Jersey as of the date of his death and, therefore, that the Court lacks subject matter jurisdiction over the Complaint because complete diversity of citizenship is lacking. *See generally* ECF No. 14.

### a. Joseph's Association with the State of New Jersey

Joseph died on February 17, 2018, at the age of 65, due to complications from cancer. Compl. at ¶ 117. Joseph was survived by his wife, Angela, and three adult children, each of whom are from prior relationships. *Id.* at ¶ 22. Joseph's death certificate provides that his "usual residence address" was in Holmdel, New Jersey (the "Holmdel House") when he died. Declaration of Michael Lerner, ECF No. 15 ("Lerner Decl."), Ex. I.

Joseph moved to New Jersey in or around 2000, and he married Angela in 2005. Compl. at ¶ 20. Angela concedes that, at the time of their marriage, the pair resided in New Jersey. *Id.* at ¶ 23. The next year, in 2006, Joseph and Angela moved into the Holmdel House. *Id.*; ECF No. 30 ("Opp.") at 5. In addition to the Holmdel House, Joseph controlled three other residential properties located in New Jersey. Lerner Decl. at ¶ 9. Joseph owned several motor-vehicles registered in New Jersey during this period as well. *Id.* ¶ 15, Ex. F. Furthermore, Joseph

---

[1] Because Plaintiff brings this action "both as administratrix for her husband's estate and in her individual capacity, in addition to establishing her own domicile . . . she must establish the citizenship of her late husband . . . at the time of his death." *Thorne v. OneWest Bank, FSB*, No. 15-422, 2015 WL 3903637, at *4 n.3 (D.N.J. June 25, 2015) (citations omitted).

[2] Plaintiff previously sought jurisdictional discovery in this case regarding Joseph's domicile. Opp. at 27–29; ECF No. 54. Magistrate Judge Andre Espinosa denied Plaintiff's request finding that the documents Plaintiff sought to review "do not raise factual questions concerning Joseph Krivulka's domicile at the time of his death." ECF No. 57 at 2.

maintained a driver's license issued by the State of New Jersey, as well as numerous personal and business bank accounts located in New Jersey, when he died. *Id.* at ¶¶ 14, 20, Ex. D. Additionally, as recently as 2016, Joseph exercised his right to vote in New Jersey during the general presidential election. *Id.*, Ex. C.

Joseph also amassed substantial wealth as a successful pharmaceutical executive working for companies headquartered in, and operated out of, New Jersey. *Id.* at ¶¶ 3, 7. In addition to his businesses, Joseph filed his individual income tax returns in New Jersey through 2015, the last year for which he individually filed income tax returns before he died. *Id.* at ¶ 17, Ex. G. And, in March 2016, less than two years before his death, Joseph executed an IRS Form W-9 that identified the Holmdel House as his permanent legal residence. *Id.* at ¶ 17, Ex. H.

### b. The Will

In 2009, Joseph retained lawyers in Lowenstein's Trusts & Estates Group to assist him with his estate planning (the "Will"). *Id.* at ¶¶ 10, 12. The most recent codicil to the Will, executed in 2016 (the "2016 Codicil"), listed Joseph's primary residence as the Holmdel House.[3] *Id.*, Ex. B. Also in 2016, Joseph and his lawyers from Lowenstein met and discussed "changing [his] domicile" from New Jersey to Arizona and the effects that such a change would have on his estate. Declaration of John Berger, ECF No. 16 ("Berger Decl."), Ex. A. However, later in that year, Joseph ultimately wrote to his lawyers at Lowenstein and expressed that he did not intend to change his domicile from New Jersey to Arizona. *Id.* at ¶¶ 4, 5, Ex. B.

---

[3] The parties agree that Joseph did not execute any codicils to the Will following this 2016 execution. Thus, the 2016 Codicil represents the final form of the Will.

### c. Joseph's Cancer Diagnosis and Time Spent in Arizona

Joseph and Angela purchased the first of their many residential properties in Arizona in March 2008. Compl. at ¶ 24. In the years to follow, the couple enjoyed an active social life in Arizona, which included joining multiple country clubs, as well as purchasing season tickets to attend Arizona Cardinals games. Opp. at 19. Ultimately, though, in August 2016, Joseph received a cancer diagnosis. Opp. at 9. Subsequently, Joseph sought and received his cancer treatments, and his hospice care, exclusively in Phoenix, Arizona. *Id.* As a result of such medical treatment, Joseph spent the vast majority of the last year of his life in Arizona. *Id.* at 10.

Joseph also began conducting more of his pharmaceutical-related business out of Arizona following his cancer diagnosis. *Id.* at 11. During this same period, Joseph maintained numerous bank accounts, and registered several motor-vehicles, in Arizona. *Id.* at 12. Joseph put the Holmdel House up for sale in 2017, but the pair did not sell the property before Joseph's death. *Id.* at 22. Joseph died at his home in Arizona in February 2018. Compl. at ¶ 117.

### d. The Period Following Joseph's Death

In March 2018, one month after Joseph's death, Angela and Lerner, the co-executors of Joseph's estate, initiated a probate proceeding in New Jersey Surrogate Court, Monmouth County. Lerner Decl. at ¶ 21, Ex. J. A few weeks later, Angela, in connection with her duties as a co-executor of Joseph's estate, signed an "affidavit of domicile" for one of Joseph's bank accounts which indicated that at Joseph's "time of . . . death, [his] domicile . . . was 3 Bucks Mill Lane, County of Monmouth, State of New Jersey. [He] resided in the State of New Jersey for 12 years immediately preceding [his] death and was not a resident of any other state." *Id.*, Ex. R. Finally, in May 2019, Angela signed tax returns for Joseph's estate covering the years immediately preceding his death. *Id.* at ¶¶ 24–26. On each of these "resident" tax returns, Angela identified

4

Joseph's "legal residence" or "domicile" as located in New Jersey. *Id.*, Ex. K–O. Angela also filed an Arizona "non-resident" income tax return on behalf of Joseph's estate for the 2017 taxable year. *Id.* at ¶ 23.

### III. LEGAL STANDARD

#### a. Federal Rule of Civil Procedure 12(b)(1)

The burden of establishing federal subject matter jurisdiction ordinarily "rests with the party asserting its existence." *Dicke v. Jialin Li*, No. 16-2163, 2017 WL 1011219, at *2 (D.N.J. Mar. 15, 2017) (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). A party may challenge subject matter jurisdiction pursuant to Rule 12(b)(1), and such challenges "may be facial or factual." *Id.* (citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (citations omitted).

##### i. Factual Attack to Subject Matter Jurisdiction

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). By contrast, a factual attack occurs where, like here, the defendants have "already filed an[] answer to the Complaint or otherwise presented competing facts," such as in the form of sworn declarations. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *see also Merck & Co. v. Apotex, Inc.*, No. 06-5789, 2007 WL 4082616, at *4 (D.N.J. Nov. 15, 2007), *aff'd*, 292 F. App'x 38 (Fed. Cir. 2008*)* ("A movant need not have yet answered the claim to factually attack subject matter jurisdiction. . . [as] a movant may [also] submit an affidavit disputing a nonmovant's factual

basis for jurisdictional allegations."); *CNA v. United States*, 535 F.3d 132, 145–46 (3d Cir. 2008), *as amended* (Sept. 29, 2008) ("[T]he Court may dismiss for lack of subject matter jurisdiction at any time, regardless of whether the moving party has filed an answer.").

Before the Court may consider a factual attack, the plaintiff must be afforded "an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of [her] jurisdictional contention." *Bautista v. St. Thomas E. End Med. Ctr. Corp.*, No. 19-0116, 2020 WL 4677517, at *2 (D.V.I. Aug. 12, 2020) (quoting *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990)); *see also Jayme v. MCI Corp.*, 328 F. App'x 768, 772 (3d Cir. 2008) (finding that the plaintiff had "an opportunity . . . [of] more than six months . . . to present facts in support of his jurisdictional contention" such that the court could consider the defendant's factual attack). Finally, when a defendant raises a proper factual attack, "the plaintiff bears the burden of establishing jurisdiction" such that "no presumptive truthfulness attaches to plaintiff's allegations."[4] *Kemp v. Select Portfolio Servicing, Inc.*, No. 17-314, 2017 WL 2876466, at *2 (D.N.J. July 6, 2017); *see also Forefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (holding that while the defendant has

---

[4] Plaintiff argues that the Court may not consider Defendants' factual attack at this stage as it was made before Defendants answered the Complaint. Opp. 14–15. The Court disagrees given that, as described above, a district court may consider a factual attack so long as the plaintiff's allegations "have been controverted," *Fuller v. FCI Manchester Health Serv.*, No. 12-7025, 2016 WL 1182255, at *4 (D.N.J. Mar. 28, 2016) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)), which is tantamount to either answering the complaint *or* "submit[ting] an affidavit . . . [that] disput[es] the non-movant's factual basis for jurisdictional allegations." *Merck*, 2007 WL 4082616, at *4. Here, Defendants "controverted" Plaintiff's allegations by submitting the Lerner and Berger Declarations disputing Joseph's asserted domicile. ECF Nos. 15, 16. Furthermore, Plaintiff was afforded with "an opportunity to present facts by affidavit . . . in support of [her] jurisdictional contention" in response to Defendants, and did so by filing numerous certifications regarding Joseph's domicile (ECF Nos. 32–34). *Berardi*, 920 F.2d at 200.

the initial "burden of production to raise a factual challenge," the plaintiff thereafter has the "burden of proof to establish diversity jurisdiction by a preponderance of the evidence").

### ii. Diversity Jurisdiction

The Complaint cites the diversity jurisdiction statute (Compl. at ¶ 18), 28 U.S.C. § 1332, which confers federal courts with subject matter jurisdiction over state law claims where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties, *i.e.*, the action is between "(1) citizens of different States; or (2) citizens of a State and citizens or subjects of a foreign state with irrelevant exceptions." *Jager v. Fleet Mgmt. Rd. Serv.*, No. 14-8130, 2017 WL 4074281, at *3 (D.N.J. Sept. 14, 2017) (citations omitted).

"Citizenship is synonymous with domicile, and the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citations omitted); *see also Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely."). "In determining an individual's domicile, a court considers several factors, including declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *McCann*, 458 F.3d at 286 (citations omitted). "Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id.* (citations omitted). Additionally, while a person may have only one domicile, that same person may have "many residences" at one time. *Gachau v. RLS Cold Storage*, No. 11-76595, 2018 WL 4005739, at *2 n.1 (D.N.J. Aug. 22, 2018) (citations omitted).

Finally, because Plaintiff brings this action "both as administratrix for her husband's estate and in her individual capacity, in addition to establishing her own domicile . . . she must establish the citizenship of her late husband . . . at the time of his death." *Thorne*, 2015 WL 3903637, at *4, n.3 (citations omitted).

## IV. DISCUSSION

While Plaintiff alleges that this Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332, the Court finds that complete diversity of citizenship between the parties is lacking as Joseph was domiciled in New Jersey when he died,[5] and, consequently, that subject matter jurisdiction is absent. *See generally* ECF No. 14; *see also Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, No. 18-15444, 2021 WL 62316, at *5 (D.N.J. Jan. 7, 2021) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely.") (citations omitted).

### a. Objective Physical Presence

To start, Joseph established an "objective physical presence" in New Jersey as of the date of his death rendering himself at "home" in this state. *Hovensa*, 652 F.3d at 344 (3d Cir. 2011). Specifically:

- Joseph was registered to vote in New Jersey at the time of his death, and most recently exercised his right to vote in New Jersey during the 2016 general presidential election (Lerner Decl. at ¶ 13);[6]

---

[5] Defendants do not appear to contest Angela's assertion that she is domiciled in Arizona as of the filing of the Complaint.

[6] Joseph registered to vote in New Jersey in 2012—four years after he purchased his first home in Arizona (Compl. at ¶¶ 24, 27)—listing the Holmdel House as his permanent address. Lerner Decl., Ex. C.

- Joseph filed resident income tax returns with the State of New Jersey through 2015, the last year for which Joseph filed income tax returns before his death (*Id.* at ¶ 17, Ex. G);[7]

- In May 2019, Angela executed tax returns on behalf of Joseph's estate covering the years immediately preceding his death indicating that Joseph's domicile was located in New Jersey (*Id.* at ¶ 24–26, Ex. K–Q);

- Joseph owned and controlled numerous companies that maintained principal business addresses in New Jersey up until his death (*Id.* at ¶ 9);

- Joseph controlled multiple residential properties located in New Jersey as of the date of his death, including the Holmdel House (*Id.* at ¶ 9);

- Joseph maintained numerous personal and business bank accounts located in New Jersey up until his death (*Id.* at ¶ 14);

- Joseph maintained a New Jersey issued driver's license as of the date of his death (*Id.*, Ex. D);

- Joseph owned several motor-vehicles registered in New Jersey at the time of his death (*Id.* at ¶ 15, Ex. F); and

- Joseph's three surviving adult children resided in New Jersey as of the date of his death (*Id.* at ¶ 20, Ex. J).[8]

*McCann*, 458 F.3d at 286 (citations omitted) (listing relevant factors for analyzing where one's domicile is located).

---

[7] Moreover, following Joseph's death, Angela and Lerner, in their capacities as co-executors of Joseph's estate, filed an Arizona "non-resident" income tax return for the 2017 taxable year on behalf of Joseph's estate. Lerner Decl. at ¶ 23.

[8] While Angela asserts that she was domiciled in Arizona (and not New Jersey) as of the date of Joseph's death (Compl. at ¶ 15), the Court notes that Angela maintained numerous New Jersey related contacts at that time, including a New Jersey driver's license (Lerner Decl. at 15, Ex. E). Furthermore, in March 2018, Angela listed her permanent residence—under penalty of perjury—as the Holmdel House, (*id.* at ¶ 22, Ex. L), and it was not until April 2018—following Joseph's death—that Angela emailed her lawyers noting that she would be "establish[ing] residence in the State of Arizona." *Id.*, Ex. F.

### b. Subjective Intention

Joseph also demonstrated that he "subjective[ly] inten[ded]" for his domicile to remain located in New Jersey. *Hovensa*, 652 F.3d at 344. For example, in 2016, just two years prior to Joseph's death and several years after Joseph purchased his first residential property in Arizona, Joseph wrote to his lawyers stating that he did not wish to change his domicile from New Jersey to Arizona. Berger Decl. at ¶ 5, Ex. B. Moreover, the Court notes that Plaintiff neither asserts that Joseph suffered from diminished mental capacity in the last years of his life, nor that he subsequently attempted to change his domicile in connection with his estate planning.

Nevertheless, Plaintiff presents purportedly countervailing evidence to support the notion that Joseph was domiciled in Arizona when he died. First, Plaintiff points to a New Jersey state court jury questionnaire that Joseph filled out in April 2017 in which Joseph indicated that he was ineligible for jury duty in New Jersey because he was "no longer [a] NJ resident." Opp. at 12. The Court finds limited relevance in Joseph's jury questionnaire, however, given the context in which Joseph gave this response. *See, e.g.*, *Guarino v. Larsen*, 11 F.3d 1151, 1154 (3d Cir. 1993) (postulating that "two persons . . . had attempted to avoid jury duty by giving false answers during *voir dire*").

Plaintiff also alleges that Joseph and Angela placed the Holmdel House up for sale prior to his death and that this provides evidence as to Joseph's intent to permanently "move[] to Arizona." Opp. at 20. Still, even aside from the Holmdel House—which Joseph and Angela never actually sold—Joseph controlled numerous other properties in New Jersey evidencing his continued connection with the state.

In addition, Plaintiff highlights that Joseph spent "85%" of his last year of life in Arizona. Opp. at 9–10. However, the Court notes that much of Joseph's time in Arizona was spent with

10

Case 2:20-cv-09724-CCC-AME Document 59 Filed 07/30/21 Page 11 of 13 PageID: 1437

medical providers (Opp. at 18–19), and federal courts have found that domiciliary analysis does not turn on where an individual receives "medical care and hospice . . . [and] ultimately passe[s] away." *See Bluecross Blueshield of Oregon*, No. 20-5445, 2020 WL 5045157, at *4 (W.D. Wash. Aug. 3, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5038733 (W.D. Wash. Aug. 25, 2020). Rather, in such instances, the Court looks to whether the decedent "made any other changes suggesting an intent to remain." *Id.* (a decedent evidences his intent for the state in which he died to be his domicile where the decedent changed "his voter registration, banking and other accounts, memberships in organizations, driver's license and automobile registration, or tax payments" to represent his residence in that state). Here, as described above, Joseph made no such efforts that suggests that he intended to change his domicile from New Jersey to Arizona.

Finally, Plaintiff avers that Joseph maintained several motor-vehicles that were registered in Arizona, conducted business in Arizona, and maintained bank accounts in Arizona in the years preceding his death. Opp. at 17–20. Nonetheless, as described above, Joseph's connections with New Jersey were, at the very least, just as strong as his associations with Arizona when he died. While the Court acknowledges that Joseph may have maintained residencies in *both* New Jersey and Arizona, *see Gachau*, 2018 WL 1919830, at *4 n.3, an individual's residency is merely tantamount to the place where he maintains a "bodily presence as an inhabitant," whereas an individual's domicile requires a demonstration of his intent to make that state his true "home." *In re Townsend*, No. 10-14167, 2012 WL 112995, at *4 (Bankr. D. Kan. Jan. 12, 2012) (citing Black's Law Dictionary). Put differently, here, while Joseph may have maintained an "objective physical presence" in both New Jersey and Arizona when he died, he only "subjectively inten[ded]" New Jersey to constitute his domicile. *Hovensa*, 652 F.3d at 344.

11

Accordingly, given that Joseph and Defendants are domiciled in New Jersey, complete diversity of citizenship is lacking here such that the Court does not maintain subject matter jurisdiction over the Complaint. *Dakota Asset Servs. LLC v. Nixon*, No. 19-16126, 2020 WL 7707042, at *2 (D.N.J. Dec. 29, 2020) ("[T]he Court . . . finds that complete diversity of citizenship does not exist in this action, and the Court [therefore] lacks subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.").

Further, insofar as Plaintiff argues that, at this stage, the Court may not consider where Joseph was domiciled when he died as this issue is too "intertwined" with the merits of Plaintiff's claims, (Opp. at 24–27) her averment is misplaced. Specifically, Plaintiff notes that her instant claims involve allegations that Defendants failed to advise her—due to a conflict of interest— about the legal ramifications of directly and indirectly listing New Jersey, as opposed to Arizona, as Joseph's domicile on various probate and post-death tax forms. ECF No. 54 at 4. As a result, according to Plaintiff, "the merits of such claims are inextricably intertwined with the factual dispute underlying [Defendants' pending motion to dismiss], *i.e.*, Mr. Krivulka's domicile when he died." *Id*. The Court, however, would find that Joseph was domiciled in New Jersey when he died even notwithstanding these probate and post-death tax forms or Plaintiff's allegations regarding Defendants' actions. Indeed, as described above, Defendants have presented numerous allegations independent from this challenged evidence—including, among other contacts, correspondence with counsel prior to his death that New Jersey was his domicile, Joseph's driver's license, his voting record, and his income tax returns—that support the Court's domiciliary finding.[9]

---

[9] With respect to Plaintiff's "conflict-of-interest" claim in her Complaint, the Court notes that after Joseph died, and while Plaintiff was represented by a counsel of her choosing, Cravath, Swaine,

## V. CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion to dismiss (ECF No. 13) is granted. An appropriate Order accompanies this Opinion.

**DATED**: July 29, 2021

**CLAIRE C. CECCHI, U.S.D.J.**

---

& Moore, she signed numerous tax returns on behalf of Joseph indicating that he was domiciled in New Jersey. ECF No. 55 at 2, n.1.