## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANGELA KRIVULKA, | : | **Civil Action No. 20-9724-CCC-AME** |
| | : | |
| Plaintiff, | : | **OPINION and ORDER on** |
| | : | **MOTION TO SEAL [D.E. 140]** |
| v. | : | |
| | : | |
| MICHAEL LERNER and LOWENSTEIN | : | |
| SANDLER LLP, | : | |
| | : | |
| Defendants. | : | |

**ESPINOSA, Magistrate Judge**

This matter comes before the Court upon the joint motion to seal various materials filed in relation to the motion for summary judgment brought by Defendants Michael Lerner ("Lerner") and Lowenstein Sandler LLP ("Lowenstein") (collectively, "Defendants") (the "MSJ Materials"), pursuant to Local Civil Rule 5.3(c) [D.E. 140]. The MSJ Materials at issue are set forth in the index submitted with the motion, in compliance with the form and content required by Local Civil Rule 5.3(c) and Appendix U (the "Index"). *See* Englander Decl., ¶ 4 [D.E. 140-1]. Plaintiff Angela Krivulka ("Plaintiff") objects to sealing certain of the documents in the MSJ Materials, for the reasons set forth in the Index and in her separate filing expounding on her objections [D.E. 141]. In its discretion, the Court has considered the motion on the papers submitted, without oral argument. *See* Fed. R. Civ. P. 78. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court grants the motion as to the MSJ Materials to be sealed in their entirety (Index at 1-30) and administratively terminates the remainder of the motion, deferring its ruling on the MSJ Materials to be redacted (Index at 31-73) but maintaining them under temporary seal pending further Order.

I.    **BACKGROUND RELEVANT TO MOTION**

This action for legal malpractice and breach of fiduciary duty arises out of Defendants' joint representation of Plaintiff and her now-deceased husband, Joseph Krivulka, for their estate planning. Plaintiff alleges Defendants failed to advise that her interests conflicted with those of Mr. Krivulka, depriving Plaintiff of the opportunity to engage separate counsel and, based upon that independent legal advice, pursue and obtain additional assets upon Mr. Krivulka's death, either as marital property under a community property regime or as a larger portion of the Estate of Joseph Krivulka (the "Estate"). On November 15, 2023, Defendants moved for summary judgment, and Plaintiff opposed the motion. In view of the subject matter of this litigation, involving both estate planning and legal advice, the bulk of the MSJ Materials were filed under temporary seal. *See, generally,* D.E. 122-26, 132, 133-34.

This motion is brought pursuant to Local Civil Rule 5.3(c)(3) for an order to maintain under permanent seal (1) certain MSJ Materials in their entirety and (2) certain MSJ Materials in part, that is, to seal the entries currently on the docket and file partially redacted versions for public access. The first category consists of documents filed as exhibits in the parties' respective supporting and opposing summary judgment papers. The second category, though including some documents, largely consists of briefs, statements of uncontested material fact, certifications, expert reports, and deposition transcripts, which in part reference topics or information set forth in the exhibits. The Index specifically identifies the documents and proposed redactions at issue and contains over ninety entries, which are incorporated herein by reference.

Although this motion to seal was filed jointly, as required by the Rule, Defendants are the primary proponents of maintaining the identified MSJ Materials under seal. They argue a sealing

order is necessary because the MSJ Materials listed in the Index consist of "sensitive financial and personal information belonging to non-parties and communications protected by the attorney-client privilege, which privilege belongs to the estate of Joseph Krivulka (the 'Estate')." Englander Decl. ¶ 2. Indeed, the Index notes some of the MSJ Materials are already covered by a prior sealing order entered in this action. *See* D.E. 48.

Plaintiff opposes the motion in part. She raises objections as to certain MSJ Materials to be sealed in their entirety. *See generally* Index at 1-30 and Wright Cert. ¶¶ 2-8. As to many of the MSJ Materials to be redacted, Plaintiff withholds objection until such time as the Court rules on the portion of the motion concerning documents to be sealed in their entirety, *see generally* Index at 31-73, maintaining it will be more efficient to defer consideration of the material to be redacted because the non-documentary items "are entirely comprised of the content Defendants seek to limit" and they "bear the burden of demonstrating good cause for sealing." Wright Cert. ¶ 7.

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court has reviewed the extensive list of MSJ Materials set forth in the Index, the proffered bases for sealing those items, and any objections thereto. Preliminarily, the Court notes its agreement with Plaintiff's proposal that it would be more efficient to defer review of the MSJ Materials to be redacted, as the basis for the proposed redactions overlaps with arguments raised concerning documents to be sealed in their entirety. Thus, in this analysis, the Court will focus on those documents, i.e., MSJ Materials listed in the Index at pages 2 through 30.[1]

---

[1] For consistency and ease of reference, this Opinion labels documents in the same manner as they are listed in the first column of the Index. Citations to "Defs. Ex." refer to the exhibits attached to the Declaration of Andrew Englander in support of Defendants' Motion for Summary Judgment dated November 15, 2023 (D.E. 123 and 126). Citations to "Pl. Ex." refer to the exhibits attached to the Certification of Lita Beth Wright in opposition to Defendants' Motion for Summary Judgment dated January 19, 2024 (D.E. 132).

A.      **Legal Standard**

Generally, "[t]here is a strong presumption of public access to judicial records and documents." *In re Zimmermann*, 739 F. App'x 101, 103 (3d Cir. 2018). That presumption, however, "is not absolute" and is rebuttable. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (internal quotation and citations omitted). To overcome the presumption of a public right to access, the movant must demonstrate that good cause exists to protect the records at issue. *Id.*; *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). Good cause requires a particularized showing that disclosure will result in a clearly defined and serious injury. *Cendant*, 260 F.3d at 194; *Pansy*, 23 F.3d at 786. Concerning restriction of public access to documents in the record, this Court must, in its discretion, weigh the private versus public interests at stake, in view of the facts of the case. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 789).

To facilitate the Court's application of these principles, Local Civil Rule 5.3(c)(3) requires the moving party to describe: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrant the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; (d) why a less restrictive alternative to the relief sought is not available; (e) any prior order sealing the same materials in the pending action; and (f) the identity of any party or nonparty known to be objecting to the sealing request. Defendants have done so here, and, as noted, Plaintiff does not object to sealing various items. The following discussion applies generally to each of the MSJ Materials listed in the Index at 1-30.

**B.    MSJ Materials to be Sealed in their Entirety (Index at 1-30)**

The MSJ Materials at issue contain highly confidential information related to Angela Krivulka's and Joseph Krivulka's estate planning matters; financial information related to Joseph Krivulka and his Estate, including his personal tax returns and details concerning the disposition of his assets; and submissions from a palimony action filed in 2005 against Joseph Krivulka involving child support issues related to his then-minor children (the "Palimony Action"). They are generally replete with sensitive, personal information pertaining to non-parties, including the Estate and its beneficiaries. Public disclosure of such information on the docket of this action would result in harm to the parties and various non-parties to this action by violating their legitimate privacy interests in personal and/or financial information of a sensitive nature, concerning which the public has little if any interest. In other words, despite the presumption in favor of public access to court dockets, the interests of the parties and non-parties in preserving their legitimate privacy concerns and protecting such parties and non-parties from harm strongly outweighs any public interest in the MSJ Materials set forth in the Index. Indeed, courts in this District have sealed documents or portions thereof containing the kind of personal, confidential information at issue here. *See, e.g. Jorjani v. New Jersey Inst. of Tech.*, Civ. No. 18-11693, 2022 WL 1811304, at *6 (D.N.J. June 2, 2022) (granting motion to seal as to "confidential and sensitive information about nonparties," reasoning that public disclosure would likely threaten their privacy interests, expose them to potential embarrassment, and harm their reputation); *In re Paulsboro Derailment Cases*, Civ. No. 12-7586, 2014 WL 4162790, at *16 (D.N.J. Aug. 20, 2014) (finding legitimate private interest in sealing "driver's license numbers, dates of birth, partial credit card numbers and the names of minors"); *Kare Dist., Inc. v. Jam Labels and Cards LLC*, Civ. No. 09-

969, 2011 WL 13238500, at *2 (D.N.J. Dec. 19, 2011) (sealing tax returns and portions of deposition testimony containing sensitive, personal information about the deponent's relationship with an employee, because publication of such information could embarrass parties and non-parties and there was no public interest in that information).

In addition to the sensitive nature of the information contained in the MSJ Materials identified in the Index, sealing is also warranted insofar as the documents or portions thereof concern attorney-client communications between Defendants and their now-deceased client Joseph Krivulka in connection with Defendants' joint estate planning representation and insofar as the documents contain attorney work product. *See Argush v. LPL Fin., LLC*, Civ. No. 13-7821, 2016 WL 11663241, at *2 (D.N.J. Dec. 7, 2016) (holding "[p]rotection of the attorney-client privilege, and by extension attorney work-product, is also a compelling reason to seal affected materials") (citing *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)); *see also Rudderow v. Bos. Sci. Corp.*, Civ. No. 20-8561, 2022 WL 1500958, at *6 (D.N.J. May 12, 2022) (sealing privileged documents and attorney work product, finding it "clear … that the parties will be harmed" if such material is made public). Here, Defendants have demonstrated that public disclosure of such material would negate the attorney-client privilege and/or work product protection and result in a clearly defined and serious injury to the Estate, which is entitled to assert the privilege. *Graco, Inc. v. PMC Glob., Inc.*, Civil No. 08-1304, 2011 WL 666048, at *21 (D.N.J. Feb. 14, 2011) (holding privilege belongs to all clients in a joint representation). As such, documents protected by the attorney-client privilege and/or the work product doctrine, and related material referring to such documents, must be sealed.

C.    **Objections**

Although she does not dispute the sensitive nature of the documents at issue in this motion, Plaintiff objects to sealing certain items on primarily three bases: (1) waiver of the attorney-client privilege based on disclosure and/or discussion of the document's subject matter in other proceedings; (2) destruction of the attorney-client privilege due to inclusion of third parties in the communication; and (3) previous publication of the information in the Palimony Action. The Court addresses below each objection in turn, and Plaintiff's additional miscellaneous objections.

1.    Waiver of Attorney-Client Privilege

This discussion pertains to Defs. Ex. 7 and Pl. Exs. 7, 8, 11, 12, 20, 21, 27, 32, 34, 35, 37, 39, 40, 50, 54, 88.

Plaintiff argues that any attorney-client privilege claimed by Defendants as a basis for sealing does not apply to documents whose subject matter has been discussed in the August 26, 2022 decision issued by the Superior Court of New Jersey's Appellate Division in connection with an appeal of two orders entered in the Estate's probate proceedings, *see In re Estate of Krivulka*, No. A-0803-21, 2022 WL 3693103 (N.J. Super. Ct. App. Div. Aug. 26, 2022), and/or where such information is already publicly available throughout the record of that appeal (the "Appellate Record"). Plaintiff maintains that any privilege that may have attached to the documents Defendants assert are protected has thus been waived. She also notes that Defendants here were involved in the probate proceedings, albeit not in their capacity as estate planning counsel for the Krivulkas but in their capacity as co-executor of the Estate (Lerner) and as counsel for co-executor (Lowenstein). Plaintiff asserts any claimed privilege or basis for restricting public access does not apply because Defendants did not move to seal any such confidential or privileged information

during the appeal. *See* Wright Cert. ¶ 2; *see, e.g.*, Index at 2, Defs. Ex. 7.

Plaintiff fails to demonstrate that the Estate has waived the attorney-client privilege applicable to the materials at issue here, and her arguments are thus unavailing. Documents, or portions thereof, containing or referencing attorney-client communications as to the Krivulkas' joint estate planning matters are privileged and cannot be disclosed without the clients' consent. *See* N.J.S.A. 2A:84A-20 ("communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it …."); *see also* Fed. R. Evid. 501 (providing that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Where clients are represented in common and communicate with their attorneys, "the privilege protects those communications from compelled disclosure to persons outside the joint representation." *Graco*, 2011 WL 666048, at *21 (quoting *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 363 (3d Cir. 2007)). Generally, a waiver of the attorney-client privilege "must be a knowing and intentional act to be effective," *Maldonado v. New Jersey*, 225 F.R.D. 120, 128 (D.N.J. 2004), and in situations involving joint representation, waiver "requires the consent of all joint clients." *Graco*, 2011 WL 666048, at *21 (citing *Teleglobe Comm'ns*, 493 F.3d at 363).

Plaintiff argues that, insofar as the exhibits may contain attorney-client communications, they have lost their protected status and/or do not otherwise warrant restricted access because publicly available filings in the Appellate Record discuss or reference the subject matter of those communications. In other words, she asserts that the purportedly privileged information is already known to the public and thus there is no basis for sealing the documents in this case. The argument

8

is unpersuasive. With one exception, Plaintiff has not shown that the specific documents at issue here have been publicly disclosed.[2] Instead, Plaintiff contends the matters discussed in the attorney-client communications in the documents to be sealed here have been referenced and essentially revealed in other documents she filed in the Appellate Record. *See* Wright Cert., Ex. 2, 5-9.

However, the mere fact of overlapping subject matter between documents publicly filed by Plaintiff and documents over which the Estate holds a claim of privilege cannot suffice to establish the Estate has waived the privilege through a voluntary and knowing act. Nor can it overcome this Court's conclusion that sealing the documents is necessary to protect the Estate's interest in maintaining the confidentiality of attorney-client communications. *Graco*, 2011 WL 666048, at *21 (holding one client in a joint representation may not "unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients."). Additionally, the Appellate Division's discussion in its August 26, 2022 decision concerning the Krivulkas' estate planning engagement of Defendants does not waive or in any way diminish the privileged and/or protected nature of the attorney-client communications and attorney work product concerning the Krivulkas' estate planning.

---

[2] Pl. Ex. 35 is an email chain among Mr. Krivulka and his attorneys advising him about possible divorce proceedings between him and Angela Krivulka, and is the same document filed by Plaintiff in the Appellate Record. Although this document was made public by Plaintiff in the probate action, the nature of the communication warrants that it be placed under seal here, to avoid further publicity of such sensitive and personal matters and to protect any privilege that may continue to attach to such communications, given the Estate's right to claim such protection. *See Haines*, 975 F.2d at 97 ("Because of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted.").

Plaintiff's citation to *In re G-1 Holdings, Inc.*, 218 F.R.D. 428, 432-33 (D.NJ. 2003), in her objections to sealing certain of the MSJ Materials suggests she may be arguing that the Estate waived any applicable privilege by putting attorney-client communications regarding estate planning "at issue" in the probate action. However, the "at issue" waiver is not applicable here. There is no indication that the Estate invoked attorney advice in connection with the appeals discussed in *In Re Krivulka*, 2022 WL 3693103, or otherwise relied on the protected information in the appellate proceedings. *Cf. id.* at 432 (holding "at issue" waiver requires an affirmative act by the party asserting the privilege that "put[s] the protecting information at issue by making it relevant to the case").

Insofar as privilege waiver is invoked in the objections, Plaintiff raises a similar argument as it pertains to attorney-client communications on the topic of the validity of the Krivulkas' marriage. As with the documents concerning estate planning matters, Plaintiff contends that the "subject matter of [the documents] is raised throughout the action brought by Defendants against Angela [in the Estate's probate matter] challenging the alleged validity of her marriage to Joseph." *See, e.g.*, Index at 18, Pl. Ex. 4. She further argues that, having put such information at issue and used it as a sword, Defendants cannot now invoke the attorney-client privilege to shield the material. Plaintiff's argument here misses the mark. In the probate proceedings, the Estate, represented by Defendants, sought a declaratory judgment on whether Joseph and Angela Krivulka were legally married. *See* Wright Cert., Ex. 12. This request for relief, by itself, does not constitute a categorical waiver by the Estate over all attorney-client communications that may pertain to the same subject matter. Nor does Plaintiff's unilateral filing of a sensitive attorney-client communication suffice to persuade the Court that other communications, on the same topic, should

be made public in this action. *See* Index at 18 (citing Wright Cert. Ex. 5.) Moreover, the sword and shield premise for waiver does not apply here. That concept prevents a party from "'disclosing communications that support its position while simultaneously concealing communications that do not.'" *V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc.*, 249 F.R.D. 152, 155 (D.N.J. 2008) (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)) (alteration in quotation omitted). There is no indication the Estate, or by extension Defendants, disclosed privileged communications to some advantage in the probate action yet seek to conceal those communications from Plaintiff here. The question is not whether the documents should be withheld from Plaintiff; indeed, she has access to them for purposes of this litigation. Rather, the question is whether their content, as attorney-client communications, warrants restricting public access. Evaluating the public and private interests at stake, the Court concludes the documents should be sealed on the docket of this action.

2.      Inclusion of a Third Party in Attorney-Client Communications

This discussion pertains to Pl. Exs. 20, 21, 26, 44, 47.

Plaintiff maintains the attorney-client privilege asserted as to certain documents is destroyed based on disclosure of the subject communication to a third party to the attorney-client relationship between and among the Krivulkas and Defendants. These third parties include financial advisors John Parise and Randall Cole and two employees of Mr. Krivulka's companies, Justine Nazzaro and Tim Soule. *See* Wright Cert. ¶ 8; Index at 13, 15, 23-24.

Controlling law on the attorney-client privilege provides that "the privilege covers only communications between a client and a lawyer, and the client's communications made through 'necessary intermediaries and agents.'" *Rawlings v. Police Dep't of Jersey City, N.J.*, 133 N.J. 182,

196 (1993) (internal citations and quotations omitted); *see also Dr. Reddy's Labs. Ltd. v. Nordion, Inc.*, Civ. No. 09-2398, 2012 WL 1656732, at *3 (D.N.J. May 10, 2012) ("[T]he New Jersey state courts have carved out a judicially-made exception to the general requirement that only direct communications between a client and a lawyer are subject to the attorney-client privilege."). "Courts will … consider a third-party an agent of client or counsel if their 'participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence.'" *Columbus Life Ins. Co. v. Wilmington Trust, N.A.*, 344 F.R.D. 207, 219-220 (D.N.J. 2023) (quoting *Symetra Life Ins. Co. v. JJK 2016 Ins. Tr.*, No. 18-cv-12350, 2019 WL 4931231, at *3 (D.N.J. Oct. 7, 2019)).

Concerning those documents for which Plaintiff contests sealing based on the inclusion of third parties in the subject attorney-client communications, the Court finds that the inclusion of financial advisors in the communications does not destroy the privilege, in view of the detailed and complex financial matters bearing on the estate planning advice discussed therein, which rendered their participation reasonably necessary to facilitate the attorney-client communication. *See Columbus Life Ins. Co.*, 344 F.R.D. at 220. The purely clerical handling of a document, scanned and emailed by Mr. Krivulka's administrative assistant at his direction, does not undermine the basis for sealing the document, a sensitive communication pertaining to Mr. Krivulka's child support matters. *See S.E.C. v. Teo*, Civ. No. 04-1815, 2009 WL 1684467, at *18 (D.N.J. June 12, 2009). As to communications involving third-party Tim Soule, the Court lacks sufficient information on this motion to conclude Mr. Soule was a "reasonably necessary" participant in these communications, such that the privileged nature of the material remains intact. However,

12

because the documents at issue contain confidential and extremely sensitive, personal information regarding plans for the disposition of the Estate, including financial information pertaining to testamentary trust and the rights of non-party beneficiaries thereunder, the Court concludes that the documents should be sealed from public disclosure on that basis.[3]

      3.      Publication of Documents Related to the Palimony Action

This discussion pertains to Defs. Ex. 20 and Pl. Exs. 2, 3, 4, 5, 28, 29.

Plaintiff maintains these exhibits, which contain documents filed in the Palimony Action, should not be sealed because the subject matter discussed therein is already publicly available in the Appellate Record. She points to two documents from the Palimony Action that are on file in the Appellate Record related to the Estate's probate matter. *See* Wright Cert., Ex. 2 and 3. Defendants argue that the documents at issue here were not filed publicly in the Palimony Action and, moreover, that the material in the Appellate Record on which Plaintiff bases her argument of prior publication was filed by Plaintiff herself. They further argue that the content of the documents herein are sensitive and that the privacy interests implicated are not obviated simply because Plaintiff acquired the files upon Mr. Krivulka's death.

The Court concludes the privacy interests of non-parties outweigh the public's interest in access to these exhibits. Sealing them is necessary to avoid further exposure of sensitive, intrusive, and potentially embarrassing details about various non-parties, including Mr. Krivulka's children and their mother. Despite Plaintiff's contention that the information they contain is neither confidential nor private, this Court will not compound the harm to the non-

---

[3] Indeed, even if the Court were to reach the question of whether the Soule documents are in fact privileged communications, which it need not do to conclude the documents should remain sealed, the prudent course of action would be to maintain the documents under seal. *See Haines*, 975 F.2d at 97.

parties by making the documents from the Appellate Record or other exhibits referencing that subject matter publicly available here.

          4.      Miscellaneous Objections to Sealing

This discussion pertains to Pl. Ex. 22, 48, 52, 53.

The request to seal these exhibits involves objections that do not fit neatly into the categories discussed above. Thus, each exhibit and objection is addressed individually.

- Pl. Ex. 22. This is an email chain between two Lowenstein attorneys relating to their joint representation of the Krivulkas. Defendants assert it should be sealed based on attorney-client privilege and, alternatively, as an internal firm communication regarding an ethical issue. Plaintiff maintains it does not contain legal advice communicated to either Joseph or Angela Krivulka. The Court concludes the document should sealed to protect the law firm's interest in maintaining the privacy of counsel's communications regarding attorney ethics and their obligations to clients.

- Pl. Ex. 48. This document, a trust agreement, contains highly sensitive and confidential information pertaining to the Estate and the various beneficiaries named in the trust agreement. This Court acknowledges it was made public by Plaintiff when she filed it in the Appellate Record but nevertheless finds that publication in this case would further harm the legitimate privacy interests of non-parties. Accordingly, balancing the private and public interest in this document, the Court concludes sealing is warranted.

- Pl. Ex. 52. These handwritten notes by a Lowenstein attorney concerning the Krivulkas' estate planning matters is both attorney-client privileged information and work product. Plaintiff asserts sealing in not appropriate as the document is already on the docket of this case, at D.E. 97. Defendants argue Plaintiff's filing of the documents was inappropriate and does not waive the Estate's claim of privilege over the document. The Court agrees. This exhibit must be sealed to protect the integrity of the attorney-client privilege and work product protection.[4]

- Pl. Ex. 53. This is a January 6, 2018 email from Lowenstein attorney John Berger to Lerner summarizing Krivulka estate planning matters (the "Berger memo"). It contains privileged attorney-client communications and constitutes attorney work product. Plaintiff maintains it should not be sealed because the subject of this document is "publicly available" in her Amended Complaint, at paragraphs 64 and 65. While those paragraphs indeed reference the Berger memo, to which Plaintiff has access, Plaintiff's reliance on the information set forth therein in pleading factual allegations in support of her claims does not waive the Estate's privilege nor does it render this document appropriate for public access. It contains extremely confidential information and must remain sealed.

---

[4] The items at D.E. 97 are unnecessary, as a duplicate filing was appropriately made by Plaintiff, under seal, at D.E. 98. The documents filed at D.E. 97 will accordingly be removed from the docket.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes Defendants have met their burden of demonstrating that the MSJ Materials specified in the Index at pages 1 through 30 must be sealed to prevent injury that would result if the documents were publicly disclosed. Moreover, although these exhibits filed in connection with Defendants' summary judgment motion will be sealed in their entirety, the Court finds that no less restrictive alternative exists because redactions would render the document meaningless.

As to the MSJ Materials to be redacted, as identified in the Index at pages 31 to 73, the Court will defer ruling until the parties have an opportunity to review the proposed redactions in view of this Opinion and Order concerning MSJ Materials to be sealed in their entirety. The parties are encouraged to reach agreement where possible or, as appropriate, narrow any objections insofar as the information to be redacted has been restricted from disclosure by virtue of this Order. For the sake of docket management, the Court will thus administratively terminate the portion of this motion applicable to the MSJ Materials to be redacted but direct that such materials remain sealed on the docket pending further Order of the Court on the parties' forthcoming, revised motion to seal.

## IV.    ORDER

Accordingly,

**IT IS** on this 27th day of September 2024,

**ORDERED** that the motion to seal at D.E. 140 is granted in part; and it is further

**ORDERED** that, pursuant to Local Civil Rule 5.3(c), the following documents, on file at D.E. 126 and 132, shall permanently be maintained under seal and shall not be made available to the public:

- Defs. Exs.1 1-11, 1-12, 1-13, 1-14, 1-15 (Joseph Krivulka United States Gift (and Generation-Skipping Transfer) Tax Returns for the years 2014 through 2018)
- Defs. Ex. 1-16 (Excerpt of the Estate's federal estate tax return dated May 16, 2019)
- Defs. Ex. 1-17 (Excerpt of the Estate's New Jersey Inheritance Tax Return dated May 17, 2019)
- Defs. Ex. 7 (March 5, 2008, letter to Joseph Krivulka from Michael Vito, Re: Estate Planning)
- Defs. Ex. 14 (Excerpt of a May 17, 2019 United States Estate (and Generation Skipping Transfer) Tax Return (Form 706) and cover letter to the Internal Revenue Service Re: the Estate)
- Defs. Ex. 20 (Complaint for Custody, Child Support, Palimony and Division of Assets filed by Lori Bonnett in the Palimony Litigation, dated February 4, 2005.)
- Defs. Ex. 40 (JJK 2016 Insurance Trust, dated August 4, 2016)
- Pl. Ex. 2 2 (March 23, 2005 Certification of Joseph J. Krivulka in Opposition to Plaintiff's Motion, which was filed on behalf of Joseph Krivulka in the Palimony Litigation)
- Pl. Ex. 3 (Certified Statement of Angela L. Engelken, dated August 3, 2005, with exhibit, which was filed in the Palimony Litigation)
- Pl. Ex. 4 (Handwritten notes sent from Joseph Krivulka to Patrick Collins)
- Pl. Ex. 5 (February 23, 2006 Transcript of the deposition of Joseph Krivulka in the Palimony Litigation)
- Pl. Ex. 6 (Michael Vito's handwritten notes from his initial meeting with Joseph Krivulka)
- Pl. Ex. 7 (February 20, 2008 Email chain between Ashley Steinhart, Michael Vito and Michael Lerner)
- Pl. Ex. 8 (March 3, 2008 Email chain between Michael Lerner and Michael Vito, copying Ashley Steinhart)
- Pl. Ex. 10 (March 6, 2008 Email chain between Michael Lerner, Joseph Krivulka, Michael Vito and Ashley Steinhart)
- Pl. Ex. 11 (March 10, 2008 Email chain between Michael Lerner and Michael Vito, dated March 10, 2008)
- Pl. Ex. 12 (March 11, 2008 Email chain between Ashley Steinhart, Michael Lerner and Michael Vito)
- Pl. Ex. 20 (June 29, 2009 Email from Michael Vito to Joseph Krivulka, John Parise and Randall Cole, copying Michael Lerner)
- Pl. Ex. 21 (July 16, 2009 Email chain between Michael Vito, Joseph Krivulka and Michael Lerner, copying John Parise and Randall Cole)

- Pl. Ex. 22 (July 16, 2009 Email chain between Michael Lerner and Michael Vito)
- Pl. Ex. 26 (November 6, 2009 Email from Justine Nazzaro to Stephen Dermer, copying Joseph Krivulka)
- Pl. Ex. 27 (November 23, 2009 Email from Stephen Dermer to Joseph Krivulka)
- Pl. Ex. 28 (November 24, 2009 Certification in Opposition to Motion for Increased Child Support, which filed on behalf of Joseph in the Palimony Litigation)
- Pl. Ex. 29 (November 24, 2009 Letter memorandum, which was filed on behalf of Joseph in the Palimony Litigation)
- Pl. Ex. 32 (April 15, 2011 Email chain between Michael Lerner and Michael Vito)
- Pl. Ex. 34 (August 9, 2013 Email from Patrick Collins to Joseph Krivulka)
- Pl. Ex. 35 (August 23, 2013 Email chain between Patrick Collins, Michael Lerner and Joseph Krivulka)
- Pl. Ex. 37 (October 16, 2013 Email from Patrick Collins to Joseph Krivulka)
- Pl. Ex. 39 (December 15, 2013 Email chain between Patrick Collins, Joseph Krivulka, Vernon Penner and Ruy Lara)
- Pl. Ex. 40 (January 6, 2014 Email from Patrick Collins to Joseph Krivulka)
- Pl. Ex. 44 (August 5, 2016 Email from Christine Schloss to John Berger)
- Pl. Ex. 47 (October 20, 2016 Email chain between John Berger, Tracy Snow and Tim Soule)
- Pl. Ex. 48 (November 29, 2016 JJK 2016 Trust Agreement)
- Pl. Ex. 50 (Typewritten notes dated March 1, 2017)
- Pl. Ex. 52 (Handwritten notes of Tracy Snow of Lowenstein Sandler)
- Pl. Ex. 53 (January 6, 2018 Email from John Berger to Michael Lerner)
- Pl. Ex. 54 (Draft chart showing the flow of funds through the estate, with handwritten notes)
- Pl. Ex. 88 (Chart entitled, "Estate of Joseph Krivulka – Share for Angela")
- Pl. Ex. 89 (Chart entitled, "Estate of Joseph Krivulka")
- Pl. Ex. 90 (Exhibits 24-29 to the May 17, 2019 United States Estate (and Generation Skipping Transfer) Tax Return (Form 706))
- Pl. Ex. 91 (Excel spreadsheets listing principally non-probate assets that Erin, Hannah and Preston Krivulka, or trusts for their benefit, were provided for in Joseph Krivulka's estate plan);

And it is further

**ORDERED** that the remainder of the motion at D.E. 140 is administratively terminated, such that a revised motion as to the "material to be redacted" can be prepared by the parties and jointly filed, pursuant to Local Civil Rule 5. 3(c). Such motion shall be filed within 30 days of this Order; and it is further

**ORDERED** that, pending the Court's decision on that forthcoming motion to seal, the

Clerk shall continue to maintain the following unredacted documents, on file at D.E. 124, 125,

126, 132, 133, and 134, under temporary seal:

- Defs. Ex. 1 (October 26, 2020 Declaration of Michael Lerner previously filed in this action)
- Defs. Ex. 1-03 (Joseph's 2012 voter registration application and subsequent voter record)
- Defs. Ex. 1-04 (Joseph Krivulka New Jersey driver's license)
- Defs. Ex. 1-05 (Angela Krivulka New Jersey driver's license)
- Defs. Ex. 1-07 (Joseph Krivulka 2013, 2014 and 2015 joint New Jersey resident income tax returns)
- Defs. Ex. 1-08 (Joseph Krivulka Form W-9 dated March 10, 2016)
- Defs. Ex. 1-09 (Joseph Krivulka Certificate of Death)
- Defs. Ex. 4 (September 2, 2022 Transcript of the deposition testimony of Angela Krivulka)
- Defs. Ex. 8 (July 16, 2009, email chain between Michael Lerner and Michael Vito)
- Defs. Ex. 9 (July 16, 2009, email chain between Michael Vito and Michael Lerner)
- Defs. Ex. 10 (April 29, 2022 Transcript of the deposition testimony of Michael Vito)
- Defs. Ex. 11 (July 15, 2009, email from Michael Vito to Michael Lerner)
- Defs. Ex. 15 (July 31, 2013, email chain between Michael Vito and Michael Lerner)
- Defs. Ex. 16 (October 7, 2022 Transcript of the deposition testimony of Michael Lerner)
- Defs. Ex. 17 (September 14, 2022 Transcript of the deposition of John Berger)
- Defs. Ex. 19 (November 1, 2016, email between John Berger and T. Soule with attachments)
- Defs. Ex. 26 (October 26, 2020 Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendants in this action)
- Defs. Ex. 32 (September 22, 2021 Plaintiff's Response to Defendants'/Counter-Claimants' Motion for Partial Judgment on the Pleadings and to Dismiss or Stay Remainder of Case, filed by plaintiff
- Angela Krivulka in the Krivulka v. Lerner, et al., No. CV2020-008668, Superior Court of Arizona, Maricopa (the "Arizona Action")
- Defs. Ex. 36 (March 10, 2023 Expert Report of Kevin M. Kilcullen)
- Defs. Ex. 37 (June 21, 2023 Transcript of deposition testimony of Kevin M. Kilcullen)
- Defs. Ex. 39 (March 10, 2023 Expert Report of Lynton Kotzin)
- Defs. Ex. 41 (Invoices for professional services rendered through July 31, 2009, by Lowenstein Sandler, LLP, dated August 13, 2009, and August 18, 2009)
- Pl. Ex. 13 (Invoices for professional services rendered through February 29, 2008, by Lowenstein Sandler, LLP, dated March 18, 2008)
- Pl. Ex. 14 (Invoices for professional services rendered through April 30, 2008, by Lowenstein Sandler, LLP, dated May 14, 2008)
- Pl. Ex. 16 (Invoices for professional services rendered through August 31, 2008, by

Lowenstein Sandler, LLP, dated September 16, 2008 and September 18, 2008)

- Pl. Ex. 17 (Invoices for professional services rendered through May 31, 2009, by Lowenstein Sandler, LLP, dated June 10, 2009)
- Pl. Ex. 19 (June 29, 2009 Email chain between Michael Lerner, Stephen Dermer and Kelly Wilson)
- Pl. Ex. 23 (Invoices for professional services rendered through June 30, 2009, by Lowenstein Sandler, LLP, dated July 17, 2009)
- Pl. Ex. 24 (August 8, 2009 Email from Michael Vito to Joseph Krivulka, Randall Cole, John Parise and Michael Lerner)
- Pl. Ex. 30 (Invoices for professional services rendered through August 31, 2009, by Lowenstein Sandler, LLP, dated September 15, 2009)
- Pl. Ex. 31 (Invoices for professional services rendered through November 30, 2009, by Lowenstein Sandler, LLP, dated December 18, 2009)
- Pl. Ex. 36 (Invoices for professional services rendered through August 31, 2013, by Lowenstein Sandler, LLP, dated September 12, 2013)
- Pl. Ex. 43 (March 7, 2016 Email chain between John Berger and Tim Soule, copying Keith Lavan)
- Pl. Ex. 45 (September 27, 2016 Email chain between John Berger, Michael Lerner and Tim Soule)
- Pl. Ex. 46 (October 18, 2016 Email chain between John Berger and Tim Soule)
- Pl. Ex. 49 (Invoices for professional services rendered through December 31, 2016, by Lowenstein Sandler, LLP) Pl. Ex. 55 (Invoices for professional services rendered through February 28, 2018, by Lowenstein Sandler, LLP, dated March 9, 2018)
- Pl. Ex. 62 (Invoices for professional services rendered through March 31, 2018, by Lowenstein Sandler, LLP, dated May 9, 2018) Pl. Ex. 77 (May 5, 2022 Transcript of day 1 of 2 of the Tracy Snow deposition)
- Pl. Ex. 78 (August 3, 2022 Transcript of the Patrick Collins deposition)
- Pl. Ex. 79 (August 9, 2022 Transcript of the Anna Amick deposition)
- Pl. Ex. 80 (August 18, 2022 Transcript of the Ashley Steinhart deposition)
- Pl. Ex. 82 (September 15, 2022 Transcript of the David Wissert deposition)
- Pl. Ex. 83 (September 16, 2022 Transcript of the Harriet Derman, J.S.C. deposition)
- Pl. Ex. 84 (January 9, 2023 Transcript of the second day of the Michael Vito deposition)
- Pl. Ex. 85 (January 13, 2023 Transcript of the second day of the Tracy Snow deposition)
- Pl. Ex. 87 (May 23, 2023 Transcript of the deposition of Michael Lerner)
- Pl. Ex. 92 (August 24, 2022 Transcript of the Stephen Dermer deposition)
- November 15, 2023 Defendants' Memorandum of Law in Support of Motion For Summary Judgment
- November 15, 2023 Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment
- January 19, 2024 Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
- January 19, 2024 Plaintiff's Responses and Objections to Defendants' Purported Statement of Undisputed Material Facts

- January 19, 2024 Plaintiff's Supplemental Statement of Disputed Facts
- March 25, 2024 Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment
- March 25, 2024 Defendants' Responses and objections to Plaintiff's Supplemental Statement of Disputed Facts.

/s/ *André M Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge